**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ERNEST NICHOLAS, | : | Civil No. 04-3326 (KSH) |
| Petitioner, | : | |
| v. | : | **O P I N I O N** |
| TERRANCE MOORE, et al., | : | |
| Respondents. | : | |

**APPEARANCES:**

ERNEST NICHOLAS, #768466B
East Jersey State Prison
Lock Bag R
Rahway, New Jersey  07065
Petitioner pro se

GARY A. THOMAS, Special Deputy Attorney General
ACTING ESSEX COUNTY PROSECUTOR
Essex County Courts Building
Newark, New Jersey  07102
Attorneys for Respondents

**HAYDEN**, District Judge

Ernest Nicholas filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. §

2254(a) challenging a judgment of conviction in the Superior Court of New Jersey.  Respondents

filed an Answer, arguing that the Petition should be dismissed.  For the reasons expressed below,

the Court dismisses the Petition with prejudice and declines to issue a certificate of appealability.

See 28 U.S.C. §§ 2253(c), 2254(a), (b), (c).

# I. BACKGROUND

Petitioner challenges a judgment of conviction entered on January 23, 1998, in the Superior Court of New Jersey, Law Division, Essex County, after a jury convicted him of conspiracy to kidnap and/or murder, first degree kidnapping, and aggravated assault. The Law Division sentenced Petitioner to an aggregate term of 30 years in prison, with a 15-year period of parole ineligibility. Petitioner appealed. In an opinion filed December 17, 1999, the Appellate Division of the Superior Court of New Jersey affirmed. State v. Nicholas, Nos. A-6501-97T4 (App. Div. Dec. 17, 1999). On March 28, 2000, the Supreme Court of New Jersey denied certification. State v. Nicholas, 163 N.J. 397 (2000) (table).

On May 2, 2000, Petitioner filed a State petition for post conviction relief in the Law Division. On July 6, 2001, the Law Division denied relief. Petitioner appealed, and in an opinion filed June 23, 2003, the Appellate Division affirmed the order denying post conviction relief. State v. Nicholas, No. A-2663-01T4 (App. Div. June 23, 2003). The Supreme Court of New Jersey denied certification on October 29, 2003. State v. Nicholas, 178 N.J. 34 (2003) (table).

Petitioner executed the Petition which is now before the Court on July 5, 2004. The Clerk received it on July 14, 2004. The Court notified Petitioner of the consequences of filing such a Petition under the Antiterrorism and Effective Death Penalty Act ("AEDPA") and gave him an opportunity to withdraw the Petition and file one all-inclusive Petition, pursuant to Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000). The Petition presents four grounds, which are set forth below verbatim:

2

Ground One:  The trial court's erroneous instructions as to accomplice liability, which failed to properly explain the distinguishing elements of second degree kidnapping as a lesser-included offense and also failed to guide the jury to the facts to consider which would lead to a conviction of the lesser-included offenses of kidnapping as well as aggravated assault, deprived Petitioner of his right to due process of law and a fair trial in violation of U.S. Const. Amends. V, Vi, XIV.

Ground Two:  The limitation imposed by the trial court on cross examination of the victim, the state's key witness, prevented petitioner from fully and fairly exercising his right to confront and cross-examine witness against him, in violation of his constitutional right to confrontation.  U.S. Const. Amend. VI.

Ground Three:  The prosecutor's improper outburst and comments during testimony and summation deprived the petitioner of his right to have a fair and impartial trial.  U.S. Const. Amend. XIV.

Ground Four:  Trial counsel's failure to adequately prepare for the case and his failure to provide to petitioner the key statement against him in order to evaluate his options on an offered plea, constitute[s] ineffective assistance of counsel.

(Pet. ¶¶ 12.A. - 12.D.)

The State filed an Answer, arguing, inter alia, that the Petition should be dismissed on the merits.

## II.  STANDARD OF REVIEW

Section 2254(a) of Title 28 of the United States Code gives the court jurisdiction to entertain a habeas petition challenging a state conviction or sentence only where the inmate's custody violates federal law:

[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

3

28 U.S.C. § 2254(a).

 "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); 28 U.S.C. § 2254(a); accord Barry v. Bergen County Probation Dept., 128 F.3d 152, 159 (3d Cir. 1997). "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." Smith v. Phillips, 455 U.S. 209, 221 (1982). "If a state prisoner alleges no deprivation of a federal right, § 2254 is simply inapplicable. It is unnecessary in such a situation to inquire whether the prisoner preserved his claim before the state courts." Engle v. Isaac, 456 U.S. 107, 120 n.19 (1982).

 In reviewing a § 2254 petition, a federal court is not permitted to address a federal constitutional claim pertinent to the facts of the case unless the petitioner asserts the claim as a ground for relief.[1] Nor may the Court recharacterize a ground asserted under state law into a federal constitutional claim.[2] "[E]rrors of state law cannot be repackaged as federal errors simply

---

[1] See, e.g., Withrow v. Williams, 507 U.S. 680, 695-96 (1993) (where habeas petition raised claim that the police had elicited petitioner's statements without satisfying Miranda, the district court erred when it "went beyond the habeas petition and found the statements [petitioner] made after receiving the Miranda warnings to be involuntary under due process criteria"); Baker v. Barbo, 177 F.3d 149, 156 n.7 (3d Cir. 1999) (where petition contains ground asserting the ineffective assistance of counsel during plea negotiations and trial, court is not permitted to consider ground, evident from the facts but not raised in the petition, that appellate counsel was ineffective by failing to advise petitioner that he faced a longer sentence by appealing the conviction).

[2] See Engle, 456 U.S. at 119-20 & n.19 (insofar as petitioners simply challenged the correctness of the self-defense instructions under state law, their petitions alleged no deprivation of federal rights and § 2254 was inapplicable); Kontakis v. Beyer, 19 F.3d 110, 116-17 & n.10 (3d Cir. 1994) (where petitioner asserted in § 2254 petition that the exclusion of testimony violated his rights under state law, federal court may not consider ground, not set forth in the petition, that exclusion of the testimony violated his federal due process rights).

4

by citing the Due Process Clause." Johnson v. Rosemeyer, 117 F.3d 104, 110 (3d Cir. 1997).

Moreover, "it is well established that a state court's misapplication of its own law does not

generally raise a constitutional claim." Smith v. Horn, 120 F.3d 400, 414 (3d Cir. 1997)

(citations and internal quotation marks omitted); see also Smith v. Zimmerman, 768 F.2d 69, 71,

73 (3d Cir. 1985).

A district court must give deference to determinations of state courts. Duncan v. Morton,

256 F.3d 189, 196 (3d Cir.), cert. denied, 534 U.S. 919 (2001); Dickerson v. Vaughn, 90 F.3d 87,

90 (3d Cir. 1996). Federal courts "must presume that the factual findings of both state trial and

appellate courts are correct, a presumption that can only be overcome on the basis of clear and

convincing evidence to the contrary." Stevens v. Delaware Correctional Center, 295 F.3d 361,

368 (3d Cir. 2002). Where a federal claim was "adjudicated on the merits"[3] in state court

proceedings, § 2254 does not permit habeas relief unless adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

---

[3] "An 'adjudication on the merits' has a well settled meaning: a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground." Rompilla v. Horn, 355 F.3d 233, 247 (3d Cir. 2004) (quoting Sellan v. Kuhlman, 261 F.3d 303, 311 (2d Cir.2001)). A state court may render an adjudication or decision on the merits of a federal claim by rejecting the claim without any discussion whatsoever. Rompilla, 355 F.3d at 247.

A decision is "'contrary to' a Supreme Court holding if the state court 'contradicts the governing law set forth in [the Supreme Court's] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result." Rompilla v. Horn, 355 F.3d 233, 250 (3d Cir. 2004) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).

Under the "'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. Whether a state court's application of federal law is "unreasonable" must be judged objectively; an application may be incorrect, but still not unreasonable. Id. at 409-10.

A court begins the analysis by determining the relevant clearly established law. See Yarborough v. Alvarado, 541 U.S. 652, __, 124 S.Ct. 2140, 2147 (2004). Clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams, 529 U.S. at 412. A court must look for "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Lockyer v. Andrade, 538 U.S. 63, 71, 72 (2003).

### III. DISCUSSION

A. Instructions

In Ground One, Petitioner asserts that the instructions violated due process because the judge did not properly explain the difference between first degree and second degree accomplice liability for kidnapping, and thereby deprived the jury of the option of convicting him of second degree kidnapping. . He argues:

6

[S]ince the evidence as well as the state witnesses' testimonies and statements clearly indicated that petitioner at any time was in possession of a gun nor involved in the shooting, a different scenario emerged. As an alleged accomplice, the key element became petitioner's state of mind, his intent. The question was not whether the victim was seriously injured, but rather petitioner himself intended such result or intended for the victim to be released unharmed. To protect petitioner's right to a fair trial, the court was obligated to explain to the jury the afore-said distinguishing abstract element. An element which could have led the jury . . . to find petitioner guilty of second degree kidnapping even though his accomplices may have committed kidnapping in the first degree. Had the jury properly instructed of the facts to consider in determining petitioner's culpability and his state of mind, a reasonable jury could well have concluded that petitioner was at fault on the subject of conspiracy but did not anticipate nor intend for the victim to be shot and seriously injured.

(Pet. at 6-7.)

The Appellate Division determined that the trial court's instructions correctly distinguished between the elements of accomplice liability for first and second degree kidnapping, and that the judge adequately explained the distinction to the jury. Specifically, the Appellate Division found:

> The court's instructions explained first and second degree kidnapping to the jury . . . [and] adequately explained the elements of accomplice liability. The court instructed the jury repeatedly that it could not find a defendant guilty of first degree kidnapping as an accomplice unless he had the same purpose and state of mind as the principal actor at the time of the shooting. See Bielkiewicz, supra, 267 N.J. Super. at 528. The jury could have understood from the court's instructions that one or more of the defendants did not commit first degree kidnapping because he intended at some point before the shooting that the victim be released unharmed and in a safe place. Therefore, defendants' arguments are without merit.

State v. Nicholas, No. A-6501-97T4 slip op. at 10-11 (App. Div. Dec. 17, 1999).

7

A habeas petitioner who challenges state jury instructions must "point to a federal requirement that jury instructions on the elements of an offense . . . must include particular provisions" or demonstrate that the jury "instructions deprived him of a defense which federal law provided to him." Johnson v. Rosemeyer, 117 F.3d 104, 110 (3d Cir. 1997). As the Third Circuit explained,

> It thus follows that for the error of state law in the justification instructions, assuming that there was an error, to be meaningful in this federal habeas corpus action, there would have to be a body of federal law justifying the use of deadly force which is applicable in a state criminal action charging an offense based on the defendant's use of that force. Then the error in the jury instructions would be significant if the instructions did not satisfy that body of law. Put in a different way, the jury instructions on justification, even if correct under state law, would need to have relieved the state of the necessity of proving an element of the offense as required by federal law or to have deprived the petitioner of a defense the state had to afford him under federal law in order to be significant in a federal habeas corpus action. If we concluded that a petitioner could obtain habeas corpus relief without making such a showing, then district courts in habeas corpus cases would sit as super state supreme courts for the purpose of determining whether jury instructions were correct understate law with respect to the elements of an offense and defenses to it.

Johnson, 117 F.3d at 110.

The problem with Petitioner's claim involving the inadequacy of the instructions is that he does not point to a federal requirement that jury instructions must include the requested particular provision, nor does he show that the absence of this instruction deprived him of a defense which federal law provided to him. Johnson at 111. In addition, Petitioner cited no Supreme Court precedent. Under these circumstances, Petitioner has not shown that the instructions were contrary to or involved an unreasonable application of the Constitution, as

determined by the Supreme Court of the United States.  He is not entitled to habeas relief on Ground One.


B.  Confrontation Clause

In Ground Two, Petitioner asserts that the trial judge violated his rights under the Confrontation Clause by sustaining the prosecutor's objection to certain questions defense counsel asked the victim on cross examination.  Specifically, Petitioner states that defense counsel was not permitted to ask the victim if he knew the reason he was shot, whether the victim was dealing drugs with Petitioner's co-defendant, whether the victim had used aliases in dealing with the police, and whether the victim's girlfriend had pending drug possession charges on which the victim expected favorable treatment in exchange for his testimony.  Respondents argue that Petitioner has misrepresented the record, in that defense counsel cross examined the victim about aliases, pending charges against him and his girlfriend, and whether the charges pending against his girlfriend had any influence over his testimony.  Respondents further argue that the limitations which the trial judge imposed on cross examination were within constitutional bounds.

The admissibility of evidence is generally a question of state law which is not cognizable under habeas review.  See Keller v. Larkins, 251 F.3d 408, 416 n.2 (3d Cir. 2001); Hickey v. Jeffes, 571 F.2d 762, 766 (3d Cir. 1978).  However, the Sixth Amendment's Confrontation Clause confers rights that cannot be satisfied merely by meeting the requirements of the rules of evidence.  The Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him."  This guarantee applies

to both federal and state prosecutions.  Pointer v. Texas, 380 U.S. 400 (1965).  "[T]he exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination."  Davis v. Alaska, 415 U.S. 308, 316-17 (1974).

In Delaware v. Van Arsdall, 475 U.S. 673 (1986), the Supreme Court held that "a criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness.'"  Id. at 680 (quoting Davis, 415 U.S. at 318).  In Van Arsdall, the Supreme Court found that, by "cutting off all questioning about an event that the State conceded had taken place and that a jury might reasonably have found furnished the witness a motive for favoring the prosecution  in his testimony, the court's ruling violated respondent's rights secured by the Confrontation Clause."  475 U.S. at 679.  However, the Supreme Court emphasized that, while the exposure of a witness' motive is an important function of the constitutionally protected right of cross-examination,

> [i]t does not follow, of course, that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing any limits on defense counsel's inquiry into potential bias of a prosecution witness.  On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.  And as we observed . . . "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way and to whatever extent, the defense might wish."  Delaware Fensterer, 474 U.S. 15, 20 . . . (1985) (*per curiam*).

Van Arsdall, 475 U.S. at 679; see also Crane v. Kentucky, 476 U.S. 683, 690 (1986) ("we have never questioned the power of States to exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability - even if the defendant would prefer to see that evidence admitted").

Petitioner asserts that the limitation on the cross-examination of the victim in regard to four areas violated Petitioner's Confrontation Clause rights. First, the Appellate Division determined that the limitation of cross-examination of the victim as to whether he had dealt drugs with a defendant who was tried separately was within the judge's discretion because the specific question "clearly violate[d] two rules of evidence," i.e., the question was a prohibited compound question and "the question inquire[d] into specific bad acts that did not result in criminal conviction nor relate to Pierre's character for truthfulness." State v. Nicholas, No. A-6501-97T4 slip op. at18.  The Appellate Division next found that the trial judge had the discretion to sustain the prosecutor's objection to the question regarding the victim's use of an alias in a prior arrest and to limit inquiries into the specific details of his prior convictions.  The Appellate Division determined that these limitations were not improper because the rules of evidence limited impeachment by prior conviction to the factual components of the conviction and the inquiries were merely a "foray into a specific instance of conduct that is clearly prohibited" by the rules of evidence. Id. at 18, 19.  Finally, the Appellate Division rejected Petitioner's claim regarding limitations on the inquiry into a pending charge in which the victim and another prosecution witness were co-defendants, finding that "[t]he judge allowed defendants to inquire about Pierre's desire to get preferential treatment for Davis, but they did not avail themselves of this opportunity." Id. at 20.

11

The constitutional question is whether the constraints the trial court imposed on the scope of cross-examination of the victim fell within the reasonable limits which a trial court, in due exercise of its discretion, has authority to establish.  Given the AEDPA's deferential standard of review and the recognized tension between the admissibility of evidence under a bias theory and the inadmissibility of the same evidence under a character theory, this Court finds that the limitation imposed on cross-examination is not contrary to or an unreasonable application of the Supreme Court's Confrontation Clause precedent.  See Savage v. District Attorney of County of Phila., 116 Fed. Appx. 332 (3d Cir. 2004) (recognizing the power of courts to exclude evidence through the application of the evidentiary rules and that the state and federal rules of evidence reflect a general reluctance to draw the inference that because a person may have acted wrongfully on one occasion, he also acted wrongfully on the occasion at issue, court held that state court did not unreasonably apply the Supreme Court's jurisprudence in rejecting § 2254 petitioner's Confrontation Clause claim).

C.  Prosecutorial Misconduct

In Ground Three Petitioner asserts that the prosecutor's improper outburst and comments during testimony and summation deprived the him of due process.  Specifically, he challenges "the prosecutor's characterization of defense counsel as turning the proceeding into a 'circus' and suggesting that their conduct was sanctionable . . . especially in view of the fact the question which prompted the prosecutor's outburst was later ruled appropriate by the court."  (Pet. ¶ 12.C. at 13-14.)  Second, Petitioner challenges the following portion of the prosecutor's summation:

> [Leslie] Pierre . . . has four prior convictions . . . .  And for those
> you can look to whether or not the oath means something.  But
> something else is going on here . . . [I]n addition to the indictable

> charges, they have something just like these guys, actual pending
> charges.  But what is bubbling to the surface here is the assertion
> you can strip from Amatullah Davis and . . . [Leslie] Pierre that
> same presumption of innocence which applies to everybody else
> here . . . Justice for all.

(Pet. ¶ 12.C. at 14.)

Prosecutorial misconduct may "so infect[] the trial with unfairness as to make the

resulting conviction a denial of due process."  Donnelly v. DeChristoforo, 416 U.S. 637, 643

(1974).  Where "specific guarantees of the Bill of Rights are involved, [the Supreme] Court has

taken special care to assure that prosecutorial misconduct in no way impermissibly infringes

them."  Id. at 642.  The quantum or weight of the evidence is crucial to determining whether the

prosecutor's statements before the jury were so prejudicial as to result in a denial of due process.

Darden v. Wainwright, 477 U.S. 168, 182 (1986); Donnelly, 416 U.S. at 644; Moore v. Morton,

355 F.3d 95, 111 (3d Cir. 2001).

On direct appeal, the Appellate Division determined that the comments of the prosecutor

did not rise to the level of prosecutorial misconduct, when examined in the context of the entire

trial, to warrant reversal.  The Appellate Division determined that the prosecutor's "circus"

comment was not egregious in that it "did not case aspersions on the defendants or the defense, it

did not attack the integrity of defense counsel by insinuating that counsel was distorting or

concealing facts, and it did not suggest to the jurors that they would violate their oaths by finding

defendants not guilty."  State v. Nicholas, No. A-6501 slip op. at 25.  The Appellate Division

further held that the claim that the prosecutor committed misconduct in summation was without

merit.  Specifically, the Appellate Division opined:

13

> The pending charges were admitted at trial for the limited purpose of establishing whether the witnesses were receiving any favorable treatment in exchange for their testimony against defendants. Thus, it was not improper for the prosecutor in summation to remind the jury that the witnesses had not been convicted of those crimes. When examined in the context of the entire trial, the two comments alleged to constitute prosecutorial misconduct did not prejudice defendants sufficiently to warrant reversal.

(Id. at 25.)

This Court concludes that the adjudication of Ground Three by the New Jersey courts did not result in a decision that was contrary to or involved an unreasonable application of Supreme Court precedent regarding prosecutorial misconduct. Petitioner is therefore not entitled to habeas relief on Ground Three.

D. Ineffective Assistance of Counsel

In Ground Four, Petitioner argues that trial counsel was constitutionally ineffective in failing to disclose during plea negotiations the existence of the victim's pretrial statement accusing Petitioner of pulling or pushing the victim inside the van. Petitioner asserts that, had counsel disclosed this evidence to him during plea negotiations, Petitioner would have accepted a plea with a maximum exposure of three years, rather than 30 for kidnapping. Petitioner presented his ineffective assistance claim on post conviction review. The Law and Appellate Divisions rejected this claim on post conviction review without significant discussion.

Under Supreme Court precedent, a defendant has the ultimate authority to make the fundamental decision as to whether to plead guilty or go to trial. See Jones v. Barnes, 463 U.S. 745, 751 (1983). In Hill v. Lockhart, 474 U.S. 52 (1985), the Supreme Court determined that the voluntariness of a guilty plea depends on the adequacy of counsel's legal advice and that the

14

two-part <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), standard governs a claim of ineffective

assistance of counsel arising out of the plea process. <u>Id.</u> at 369-71. Under the <u>Strickland</u>

standard, a defendant must "show that counsel's representation fell below an objective standard

of reasonableness." <u>Strickland v. Washington</u>, 466 U.S. 668, 687-88 (1984). "A convicted

defendant making a claim of ineffective assistance must identify the acts or omissions of counsel

that are alleged not to have been the result of reasonable professional judgment." <u>Id</u>. at 690. The

court must then determine whether, in light of all the circumstances at the time, the identified

errors were so serious that they were outside the wide range of professionally competent

assistance. <u>Id</u>. In <u>McMann v. Richardson</u>, 397 U.S. at 771, the Supreme Court described the

question on ineffectiveness of counsel in plea situations as not whether "counsel's advice [was]

right or wrong, but . . . whether that advice was within the range of competence demanded of

attorneys in criminal cases." Thus, to establish ineffective assistance, the petitioner must

"demonstrate gross error on the part of counsel . . ." <u>Id.</u> at 772.

     Under <u>Strickland</u>, as modified by <u>Hill v. Lockhart</u>, the prejudice requirement "focuses on

whether counsel's constitutionally ineffective performance affected the outcome of the plea

process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show

that there is a reasonable probability that, but for counsel's errors, he would not have pleaded

guilty and would have insisted on going to trial." <u>Hill</u>, 474 U.S. at 59.

     The Third Circuit has held that counsel's failure to communicate a plea offer states a

Sixth Amendment ineffective assistance claim. <u>See</u> <u>United States ex rel. Caruso v. Zelinsky</u>, 689

F.2d 435 (3d Cir. 1982). The Third Circuit has also held that, although counsel notifies a

defendant of the terms of a plea bargain, counsel's failure to inform the defendant about his

sentencing exposure when the likelihood of his conviction was overwhelming constitutes deficient performance.  See United States v. Day, 969 F.2d 39, 43 (3d Cir. 1992).  The Third Circuit determined that, under these circumstances, "the advice . . . he received was so incorrect and so insufficient that it undermined his ability to make an intelligent decision about whether to accept the [plea] offer."  Id.; see also Baker v. Barbo, 177 F.3d 149 (3d Cir. 1999) ("we must hold that an attorney who does not know the basic sentence for an offense at the time that his client is contemplating entering a plea is ineffective").

In this case, Petitioner does not allege that defense counsel failed to communicate the plea offer.  He does not assert that counsel failed to inform him of his sentencing exposure or affirmatively misled him about the law.  Under these circumstances, Petitioner has not shown that the advice he received was "so incorrect and so insufficient that it undermined his ability to make an intelligent decision about whether to accept the offer."  Day, 969 F.2d at 43; see also Hill v. Lockhart, 474 U.S. at 56-57; Von Moltke v. Gillies, 332 U.S. 708, 721 (1948) ("Prior to trial an accused is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered").  Petitioner is not entitled to habeas relief on his ineffective assistance of trial counsel claim because he has not shown that the adjudication of the claim by the New Jersey courts resulted in a decision that was contrary to, or involved an unreasonable application of Supreme Court jurisprudence.

E.  Certificate of Appealability

16

The Court denies a certificate of appealability because Petitioner has not made "a substantial showing of the denial of a constitutional right" under 28 U.S.C. § 2253(c)(2).  See Miller-El v. Cockrell, 537 U.S. 322 (2003).

## IV.  CONCLUSION

Based on the foregoing, the Court dismisses the Petition with prejudice and declines to issue a certificate of appealability under 28 U.S.C. § 2253(c).

KATHARINE S. HAYDEN, U.S.D.J.

DATED: _____January 18_____, 2006

18